UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERBERT ST. CLAIRE CRICHLOW, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WARNER MUSIC GROUP CORP., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 07-01622 (HHK) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANT WARNER
MUSIC GROUP CORP. TO DISMISS THE COMPLAINT**

Steven B. Fabrizio (DC Bar 436482)
Iris E. Bennett (DC Bar 491413)
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
(202) 639-6000

## **INTRODUCTION**

This lawsuit has absolutely no connection to the District of Columbia, and should never have been brought here. The opposition to the motion to dismiss submitted by Plaintiff Herbert St. Claire Crichlow ("Crichlow") reveals no more basis for maintenance of this suit than did the patently inadequate allegations in the Complaint.

Regarding personal jurisdiction, Crichlow cannot and does not dispute that where, as here, a defendant's only operations in the District of Columbia consist of government relations, there is no general personal jurisdiction. Crichlow now argues that general personal jurisdiction exists based on a vague allegation of music sales in the District by indirectly owned subsidiaries of defendant Warner Music Group Corp. ("Warner Music Group"). Even if true, this allegation fails to meet the stringent standards for general personal jurisdiction.

Crichlow seeks to evade the consequences of the exclusive forum selection clause in the agreement between Muziekuitgeverij Artemis BV and A Lemon Groove AB (the "Artemis Agreement") – a clause that mandates litigation of this dispute in the High Court of London – by insisting that his claims are for torts. The courts, however, have consistently and roundly rejected such attempts at artful pleading, and have ruled in circumstances indistinguishable from those present here that the parties are governed by the forum selection clause to which they have agreed.

Finally, Crichlow's only argument against dismissal on forum non conveniens grounds is that there may be a witness in Los Angeles, California. To state the obvious, however, a potential witness in Los Angeles does not support litigating this matter in the District of Columbia. Crichlow's opposition merely reinforces that there is no connection at all between

this action and the District. The balance of private and public interest factors requires a forum non conveniens dismissal.

## ARGUMENT

**I.     The Complaint Must Be Dismissed for Lack of Personal Jurisdiction in the District of Columbia Over Warner Music Group.**

Crichlow has failed to provide, as he must in order to defeat a Rule 12(b)(2) motion to dismiss, a "determinative factual presentation that a court has authority over a challenging party if that party is to be subject to the burdens of defending further litigation." *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 36 n.6 (D.D.C. 2007), *amend denied*, 244 F.R.D. 10 (D.D.C. 2007). The bare-bones allegation in the Complaint that Warner Music Group "conducts business in the District of Columbia" is fatally deficient. WMG Open. Br. 7-8. Crichlow's opposition, which puts forward a single additional jurisdictional allegation – that Warner Music Group indirectly owns various subsidiaries that allegedly sell "musical products" in the District – fares no better. Pl. Opp. Br. 6.

For two reasons, Crichlow's allegation regarding sales of products in the District falls far short of the showing required to establish general personal jurisdiction over Defendant in accordance with the D.C. Code and the constraints of due process. *See* D.C. Code § 13-334; *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). *First*, even if true, sales by indirect subsidiaries cannot establish general personal jurisdiction over Warner Music Group merely because Warner Music Group is their ultimate parent corporation. To find jurisdiction on the basis asserted by Crichlow would open countless corporations whose subsidiaries sell or offer products or services throughout the U.S. to the general jurisdiction of any court in the country, a result clearly inconsistent with due process. *Second*, even if such sales could be imputed to Defendant Warner Music Group, they would not meet the stringent

2

standard for general personal jurisdiction where, as here, there is no other conduct constituting continuous and systematic business contacts by the Defendant with the forum.

### A. Alleged Sales by Indirect Subsidiaries Cannot Be Imputed to Warner Music Group to Establish General Personal Jurisdiction.

Crichlow seeks to establish jurisdiction by conflating sales of products by indirect subsidiaries of Warner Music Group with (non-existent) sales by Warner Music Group. Crichlow claims that the fact of ultimate ownership without more renders Warner Music Group indistinguishable from its indirect subsidiaries for purposes of general personal jurisdiction. This contention ignores the well-settled rule that a subsidiary's contacts with a forum may not be attributed to the parent unless the two "are not really separate entities," or one is the agent of the other. *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. 1996) (quotation marks omitted).

Crichlow does not (and cannot) even allege that Warner Music Group exercises the type of dominion and control over its indirect subsidiaries that would justify disregarding their separate corporate existence for purposes of general personal jurisdiction. Warner Music Group is not in the business of selling albums, administering musical compositions or signing artists. Supplemental Declaration of Paul M. Robinson ("Supp. Robinson Decl.") ¶ 2. It is a holding company in the purest sense and not an operating company. *Id.* ¶ 3. Warner Music Group is a publicly traded company – the ultimate parent of many other entities that on their own behalf deal in sound recordings and musical compositions in the U.S. and abroad. *Id.* ¶ 4. But Warner Music Group does not own sound recordings or musical compositions and does not sell or offer any product or service in the District of Columbia. *Id.* ¶¶ 5-6. Warner Music Group's subsidiaries that deal in sound recordings and musical compositions are owned indirectly and are distinct legal entities with their own boards, management structures and employees. *Id.* ¶ 7.

Indeed, Crichlow's position if accepted would result in an extraordinarily sweeping theory of general jurisdiction, and is belied by the case law. *See, e.g., Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) (rejecting argument that general personal jurisdiction over defendant could be premised on sales of products and other activities in the forum by defendant's subsidiaries); *Heller v. Nicholas Applegate Capital Mgmt., LLC*, 498 F. Supp. 2d 100, 112 (D.D.C. 2007) (dismissing suit for lack of personal jurisdiction where plaintiffs failed to show that the defendant exercised control or direction as to the alleged agent corporation, which was the only entity with contacts with the forum, and the alleged agent corporation was "operationally autonomous"); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 48 (D.D.C. 2003) (declining to impute corporation's contacts to parent where "[t]he pleading is devoid . . . of any allegations tending to demonstrate" the requisite degree of domination and control); *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 77 (D.D.C. 2003) (finding no general personal jurisdiction over defendant where branches doing business in the District were operated by defendant's subsidiary); *In re Baan Co. Secs. Litig.*, 245 F. Supp. 2d 117, 129-30 (D.D.C. 2003) (noting that "only in special circumstances can jurisdiction be asserted over an out-of-forum parent corporation based on the forum contacts of its subsidiary" since otherwise "the difference between parents and subsidiaries that has long existed in the law of personal jurisdiction is obliterated").

  **B.**   **Mere Sales Without Other Conduct Amounting to a Continuous Corporate Presence Does Not Give Rise to General Personal Jurisdiction.**

The fact that sales of products by indirect subsidiaries have no jurisdictional relevance to Warner Music Group should end the analysis. However, even if such sales could be imputed to Defendant Warner Music Group, such sales could not justify the exercise of *general* personal jurisdiction. The test for general jurisdiction is demanding: "because general jurisdiction is not

4

related to the events giving rise to the suit, courts impose a more stringent minimum contacts test than for specific jurisdiction." *Gorman*, 293 F.3d at 510 n.4 (internal quotation marks, alterations, and citation omitted); *see also Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987) (noting the statutory line under the D.C. Code between general jurisdiction under the "doing business" provision, and specific jurisdiction under the "transacting business" prong). General personal jurisdiction requires Crichlow to demonstrate that Warner Music Group has "a continuing corporate presence in the forum . . . directed at advancing the corporation's objectives." *El-Fadl*, 75 F.3d at 675 (discussing D.C. Code § 13-334; ellipses in original). Business contacts with the forum must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (discussing due process limits for general personal jurisdiction). "[T]he defendant's contacts [must] be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Merely placing products in the stream of commerce provides no basis for exercising general jurisdiction over a nonresident defendant. *E.g., Alpine View*, 205 F.3d at 216. This would be the case even if Warner Music Group were engaging in this activity itself (which it is not). Unsurprisingly, District of Columbia courts have consistently found personal jurisdiction lacking when allegations of sales in the District were unaccompanied by other activity in the District sufficient to constitute a continuing corporate presence. *See, e.g.*, *Harran Transp. Co. v. National Trailways Bus System*, Civ. A. No. 84-2864, 1985 WL 2349, at *3-*4 (D.D.C. Aug. 5, 1985) (no general personal jurisdiction over corporation that made over $5 million in sales in the District of Columbia); *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1150-51 (D.C. 1985) (no general personal jurisdiction over a foreign corporation that for a period of ten years derived over

5

$3,000,000 in sales in the District, sent six of its employees once every two to three weeks into the District to solicit sales, and did intermittent advertising in the District); *Everett v. Nissan Motor Corp. in U.S.A.*, 628 A.2d 106, 109-10 (D.C. 1993) (defendant corporation not subject to general personal jurisdiction in the District despite the fact that it distributed cars nationwide); *Goodman v. Carnival Cruise Lines*, Civ. A. No. 89CA13130, 1990 WL 608652, at *1-*2 (D.C. Super. Ct. Dec. 14, 1990) (no general jurisdiction despite two years of advertising and over 2,800 sales to D.C. residents by a foreign corporation).

To find jurisdiction based on mere sales would subject countless defendants who sell products throughout the U.S. to the jurisdiction of any court in the country, based on any transaction or occurrence taking place anywhere in the world. This result clearly would be inconsistent with due process, and cannot be sustained. *See Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990) (holding that there was no general jurisdiction over defendant sued for libel based on defendant's record sales in forum because "[i]f [defendant] could be sued on an unrelated cause of action because of concerts and record sales, then he likely would be amenable to suit in all the states of the union on any cause of action").

As described in more detail in Defendant's opening brief, Warner Music Group's sole presence in the District is the operation of a small public policy and government relations office consisting of a single employee and her assistant. WMG Open. Br. 9-10. Warner Music Group is not authorized to do business in the District, and it does not do business here. *Id*. at 9. Warner Music Group's activities in the District fall squarely within the "government contacts" exception and are of no moment. *Id.* at 8-11; *Crane*, 814 F.2d at 761-62 (a defendant's contacts with the federal government do not enter into the personal jurisdiction calculus).

6

## II.  The Artemis Agreement's Exclusive Forum Selection Clause Also Requires Dismissal of the Complaint.

Crichlow cannot avoid the inevitable result of the exclusive forum selection clause in the Artemis Agreement that requires this dispute be litigated in London. WMG Open. Br. 12-13. Crichlow's sole ground for disregarding the forum selection clause is that his claims sound in tort, not in contract. Pl. Opp. Br. 9. But courts have uniformly rejected that argument: "[S]trategic or artfully drawn pleadings will not be permitted to circumvent an otherwise applicable forum selection clause, because narrowly interpreting a forum selection clause may permit parties to avoid it by simply pleading non-contractual claims," which would "run counter to the law favoring forum selection clauses." *Worldwide Network Servs., LLC v. DynCorp Int'l*, 496 F. Supp. 2d 59, 63 (D.D.C. 2007); *see also Collin County v. Siemens Bus. Servs., Inc.*, No. 06-40302, 2007 WL 2908926, at *4 (5th Cir. Oct. 3, 2007) (fraud and negligent misrepresentation claims subject to forum selection clause because claims could not "be maintained without reference to [plaintiff's] contracts" with defendants).

It is immaterial that one of the torts alleged is fraudulent inducement. As the Supreme Court explained in *Scherk v. Alberto-Culver Co.*, a forum selection clause is not rendered inapplicable merely because a dispute is based upon an allegation of fraud. 417 U.S. 506, 518-19 (1974); *see also Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) ("a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance"); *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 847 (3d Cir. 2003) ("the mere allegation of fraudulent conduct does not suspend operation of a forum selection clause").

The core of Crichlow's complaint is a dispute about performance under a contract. WMG Open. Br. 12-13. Crichlow claims that during the negotiations leading to the Artemis Agreement, Hans Desmond, a former employee of Warner/Chappell Music Scandinavia AB, fraudulently induced Crichlow to enter into the Artemis Agreement by representing that Warner/Chappell would deliver certain "detained income" allegedly owed to Crichlow under an agreement with Megasong Publishing A/S (the "Megasong Agreement"). Compl. ¶¶ 12-15. Thus, the Artemis Agreement is the contract that Crichlow alleges was fraudulently induced, and it is the source of the alleged "duty to deliver" Crichlow's "detained income." *Id.*; *see* WMG Open. Br. 12. This suit, as evidenced by the emails submitted as an exhibit to Crichlow's opposition, concerns whether Crichlow has been paid the correct amounts under his agreements: it is a royalty dispute. Obviously, adjudicating the merits of Crichlow's alleged torts "involve[s] the same operative facts and ultimately turn[s] on the existence of the contractual relationship between the parties," thus easily falling within the scope of the contractual forum selection clause establishing venue in the High Court of London. *Worldwide Network Servs.*, 496 F. Supp. 2d at 63.[1]

Accordingly, the Complaint must be dismissed for improper venue. *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite S.p.A.*, 867 F.2d 697, 699 (D.C. Cir. 1989) (dismissing under Rule 12(b)(3) based on forum selection clause); *Gamma Constr. Co. v. Werhan Folkers & Monihan, Inc.*, 11 F. App'x 814 (9th Cir. 2001) (same).

---

[1] As previously noted by Warner Music Group, the only other conceivable forum for this dispute is Denmark, the venue required by the Megasong Agreement that Crichlow claims resulted in him being owed $500 million in "detained income." WMG Open. Br. 14 n.7; Compl. ¶ 9.

8

**III.    Dismissal of the Complaint Is Required by the Doctrine of Forum Non Conveniens.**

The Court need not reach the issue of dismissal on forum non conveniens grounds because of the existence of an exclusive forum selection clause. WMG Open. Br. 15; *see M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 15 (1972). However, forum non conveniens constitutes yet another basis upon which this suit must be dismissed: the balance of private and public interest factors overwhelmingly favors litigation of this dispute in England. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The *only* fact that Crichlow presents in favor of the convenience of a District of Columbia forum is the possible presence of a single witness in *Los Angeles, California*. *See* Pl. Opp. Br. 9. Yet the location of a witness in Los Angeles could not begin to justify litigation of this dispute in the District of Columbia.

Crichlow fails even to address, let alone rebut, the evidence that overwhelmingly demonstrates that this suit must be dismissed under the doctrine of forum non conveniens. Specifically, Crichlow does not dispute that he is located in Sweden. WMG Open. Br. 16. He does not dispute that all of the companies even arguably involved in the negotiation or performance of either the Artemis Agreement or the Megasong Agreement are non-U.S. entities. *Id.* at 16-17. He does not dispute that the parties to the Artemis Agreement were represented during the contract negotiations by attorneys in London, and that the other attorneys involved were in Sweden. *Id.* He does not dispute that he has continued to be represented by London-based attorneys in connection with the claims put forth in the Complaint since 2002. *Id.* He does not dispute that the monies already paid, and the monies Crichlow alleges he is still owed, are all in non-U.S. currency. *Id.* And he does not dispute that Hans Desmond was located in Sweden during the Artemis Agreement negotiations and remains in Sweden today. *Id.* at 16.

In short, Crichlow's claims lack any connection to this forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947); *El-Fadl*, 75 F.3d at 677.

9

## **CONCLUSION**

For the reasons set forth herein and in Warner Music Group's opening brief, Defendant respectfully submits that the Complaint must be dismissed.

Dated: October 25, 2007

Respectfully submitted,

By: ⎯⎯⎯⎯/s/⎯⎯⎯⎯
Steven B. Fabrizio (DC Bar 436482)
Iris E. Bennett (DC Bar 491413)
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
(202) 639-6000

*Attorneys for Defendant Warner Music Group Corp.*

**CERTIFICATE OF SERVICE**

     I hereby certify that I caused copies of the foregoing Reply Memorandum in Support of Motion by Defendant Warner Music Group Corp. to Dismiss the Complaint and Supplemental Declaration of Paul M. Robinson to be served on October 25, 2007, to the following counsel by first class mail, postage prepaid, and electronically via the Court's ECF system:

    Prof. Dr. Chernor M. Jalloh, Esq.
    The Jalloh Law Firm
    1150 Connecticut Avenue N.W.
    Suite 900
    Washington, DC  20036-4197
    *Attorney for Plaintiff Herbert St. Clair Crichlow*

Dated: October 25, 2007                        Respectfully submitted,

                                                      By:    /s/_____
                                                               Iris Bennett

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERBERT ST. CLAIRE CRICHLOW,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>WARNER MUSIC GROUP CORP.,  )<br>  )<br>Defendant.  )<br>  ) | Civil Action No. 07-01622 (HHK) |

### SUPPLEMENTAL DECLARATION OF PAUL M. ROBINSON

I, Paul M. Robinson, hereby declare as follows:

1. I am Executive Vice President and General Counsel of Warner Music Group Corp., formerly known as WMG Parent Corp. ("Warner Music Group"). From 1995 to 2004, I was a member of the corporate legal department of the Warner Music Group division of Time Warner Inc. ("Time Warner"). When this division was purchased by Warner Music Group in March 2004, I became part of the corporate legal department of Warner Music Group, and in January 2007 I began to act as General Counsel. I submit this supplemental declaration in support of Warner Music Group's motion to dismiss the Complaint filed in this action. I have personal knowledge of the matters discussed in this declaration and, if called upon, I could and would testify to each of the statements made herein.

2. Warner Music Group is not in the business of selling albums, administering musical compositions or signing artists.

3. Warner Music Group is a holding company in the purest sense, not an operating company.

4. Warner Music Group, a publicly traded company, is the ultimate parent of many other entities that on their own behalf deal in sound recordings and musical compositions in the U.S. and abroad.

5. Warner Music Group does not own sound recordings or musical compositions.

6. Warner Music Group does not sell or offer any product or service in the District of Columbia.

7. Warner Music Group's subsidiaries that deal in sound recordings and musical compositions are owned indirectly and are distinct legal entities with their own boards, management structures and employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York, on this 25th day of October, 2007.

*[signature]*
Paul M. Robinson